

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2007

# Kusnaidy v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1345

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kusnaidy v. Atty Gen USA" (2007). *2007 Decisions.* Paper 869.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/869

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1345

KUSNAIDY,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-152-960)

Submitted under Third Circuit LAR 34.1(a)
on March 29, 2007

Before: FISHER, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 28, 2007)

OPINION

**ROTH**, <u>Circuit Judge</u>:

Kusnaidy[1] petitions us for review of the order of the Board of Immigration Appeals (BIA or Board) affirming and adopting the Immigration Judge's (IJ) denial of Kusnaidy's petition for withholding of removal under the Immigration and Nationality Act (INA) and his application for protection under the Convention Against Torture (CAT). We will deny the petition because substantial evidence in the record supports the IJ's conclusions that Kusnaidy had not suffered past persecution and is not more likely than not to face future persecution should he be returned to Indonesia.

## I. **Procedural History**

Kusnaidy, a citizen of Indonesia of Chinese descent, entered the United States on October 22, 2000, as a non-immigrant visitor, with permission to stay until June 2, 2001. On April 7, 2003, he filed an application for asylum and withholding of removal.[2] Hearings were held before an IJ on September 30, 2003, and November 15, 2004. Kusnaidy conceded removability and applied for relief in the form of asylum, withholding of removal under the INA, and protection of removal under the CAT; in the alternative, he sought voluntary departure.

The IJ denied Kusnaidy's petition for his withholding of removal under the INA and

---

[1]It is not unusual for Indonesians to use only one name. In the petitioner's affidavit, he refers to himself only as Kusnaidy, without any last name.

[2]Respondent's brief notes the date of application for asylum as April 22, 2003. However, the IJ's Oral Decision states that Kusnaidy's I-589 application for asylum was filed on April 7, 2003.

protection from removal under the CAT based on the merits, and denied his petition for asylum both as untimely filed and on the merits. The request in the alternative for voluntary departure was granted, and Kusnaidy was given sixty days to leave the country.

Kusnaidy appealed the denials. In December 2005, the BIA affirmed and adopted the IJ's decision, and extended the period of voluntary departure an additional 45 days. Kusnaidy filed a timely petition for review in this Court. His argument is limited to the denial of withholding of removal under the INA and the denial of protection under the CAT. By order dated April 5, 2006, we denied his Motion for Stay of Removal and Stay of the Period of Voluntary Departure, finding that he had failed to demonstrate a likelihood of success on the merits.

## II. Jurisdiction and Standard of Review

This court has jurisdiction to review a final order of removal by the BIA under 8 U.S.C. § 1252(b)(2). *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

When the BIA affirms and adopts the decision of an Immigration Judge, this court reviews the IJ's decision as if it were the decision of the Board. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003). Board determinations are upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We will reverse only if "the evidence not only supports [a contrary] conclusion, but *compels* it." *Id*. at 481 n. 1 (emphasis in original).

## III. Discussion

## A.  Withholding of Removal Under the INA

Under 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." In order to qualify for withholding, Kusnaidy must demonstrate a "clear probability"of persecution, i.e., that it is more likely than not that he would be persecuted if forced to return to Indonesia. *Gabuniya v. Attorney General*, 463 F.3d 316, 320-321 (3d Cir. 2006).

Kusnaidy sought withholding of removal because of alleged past persecution in Indonesia and a fear of future persecution if he returns.  Kusnaidy supports his claim with testimony of two incidents where he was harassed and physically assaulted in Indonesia.  The first incident occurred on May 13, 1998, during that year's riots.  Kusnaidy testified that he was at work when the riots began.  His boss, knowing of the potential danger, allowed Kusnaidy to leave work early.  Kusnaidy stated that while riding his motorcycle home from his office, he noticed people burning tires. Eventually three men stopped him and asked him to remove his helmet.  Once they saw his face, they shouted 'Chinese, Chinese," and began hitting him and beating him.  Kusnaidy further testified that he was able to flee on foot.  While attempting to escape, another man with a metal rod tried to stop him.  The man slammed the rod at Kusnaidy's head.  Kusnaidy testified that he was able to parry the blow

4

to his head by lifting his arms, which resulted in some swelling of his hands.[3] He eventually escaped through the alleyways and knocked on the door of an individual who opened it and allowed him to enter. Kusnaidy testified that he stayed there for five days, and the wife of the individual treated his wounds.

The second incident to which Kusnaidy testified occurred over two years later, on August 28, 2000. He and two friends were on a bus when five to six native Indonesians boarded the bus and held out knives and swords. One man stated that they only intended to rob the Chinese. Kusnaidy testified that the men robbed him and his friends, then exited the bus at the traffic light. Kusnaidy did not testify to any injuries incurred. Kusnaidy further testified that he had never had any problems on account of his religion, and that he left Indonesia because he did not feel it was safe for ethnic Chinese to remain after his two incidents.

These two incidents are not enough to establish eligibility for withholding of removal. There are three reasons for our decision. First, Kusnaidy testified that his mother, older sister, and two brothers still remain in Indonesia unharmed. The reasonableness of a petitioner's well-founded fear of future persecution is diminished when family members remain unharmed in the petitioner's native country. *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d

---

[3]There were minor discrepancies between the petitioner's asylum application and statements made in his affidavit. In the asylum application, petitioner alleged that he had been struck in the head, while the affidavit did not. The oral transcript of petitioner's testimony seems to indicate these differences were due to petitioner's unfamiliarity with English more than anything else.

5

Cir. 2005). Although Kusnaidy testified to an incident involving his younger sister during the chaos of the 1998 riots in which she was verbally harassed, there is no other evidence in the record that alleges any of his family members remaining in Indonesia have ever suffered ethnic or religious persecution.

Second, the Department of State's country reports upon which the parties have relied belie Kusnaidy's claim that the current situation in Indonesia reaches the level of persecution. The record indicates that the situation in Indonesia has not worsened, and may have improved since the 1998 riots.[4] Moreover, even shortly after those riots, the authors of the 1999 Country Report concluded that the civil unrest did not amount to a pattern or practice of persecution.

Finally, the record reveals that Kusnaidy's fear of returning to Indonesia is speculative; he assumes that because there is a problem with unemployment, at some point in the future there might again be riots targeting ethnic Chinese. Such speculation is insufficient for him to meet his burden of showing a well-founded fear of future persecution. Furthermore, his brief alleges religious persecution for his Christian beliefs. Based on Kusnaidy's testimony that he had no problems as a Christian and that he did not attend church since leaving Indonesia, the IJ properly determined that Kusnaidy did not suffer past

[4]According to the 2003 Country Report, the Indonesian government has become more tolerant and officially promotes religious and ethnic freedom. The report notes that there are no restrictions on religious or ethnic minorities in politics, the Chinese New Year recently became a national holiday, and magazines and journals, as well as television and radio shows can be seen, heard and read in Chinese.

religious persecution, nor would he experience future religious persecution.

In sum, the IJ correctly concluded that although Kusnaidy may have suffered physical and mental harassment based on his ethnicity in the past, none of those acts rose to the level of persecution. In *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993), we defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Further, the IJ noted that the two incidents to which petitioner testified, while unfortunate, were nothing more than two occasions of criminal activity. The IJ also noted that in no way were these two assaults condoned or carried out by any members of the Indonesian government. Nothing in the record would compel any reasonable factfinder to hold that Kusnaidy was subjected to persecution in the past or that he is more likely than not to face persecution if returned to Indonesia. *See Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) (holding that "evidence of generalized lawlessness does not compel a conclusion that an alien has been subjected to persecution on account of ethnicity or religion").

**B. Withholding of Removal Under the Convention Against Torture**

An alien may obtain withholding of removal pursuant to the CAT if he shows it is "more likely than not that he or she would be tortured if removed to the prosed country of removal." 8 C.F.R. § 208.16(c)(2).[5] The standard for relief under the Convention "has no

---

[5]The CAT defines "torture" as "any act by which severe pain, or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining. . . information or a confession, punish[ment] . . . , or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the

subjective component, but instead requires the alien to establish, by objective evidence, that he is entitled to relief." *See Sevoian v. Ashcroft*, 290 F.3d 166, 174-175 (3d Cir. 2002).

Substantial evidence in the record supports the IJ's finding that Kusnaidy did not meet his burden. Not only did he fail to implicate the government in his torture claim, he also failed to produce any evidence that would suggest he was or would be tortured in Indonesia at all. Kusnaidy presented no "[e]vidence of gross, flagrant or mass violations of human rights," inflicted or more likely than not to be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Tarrawally v. Ashcroft*, 338 F.3d 180, 187-88 (3d Cir. 2003) (internal quotation marks and citations omitted). *See also Zubeda v. Ashcroft*, 333 F.3d 463, 478 (3d Cir. 2003) (holding that "reports of generalized brutality within a country" are not enough to qualify for relief under the CAT).

## IV. Conclusion

For the above reasons, we will deny the petition for review.

---

consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).